1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14

| | |
|---|---|
| MERCEDES FALU-MAYSOMET, on behalf of herself and all others similarly situated, | CASE NO. 13-cv-02285 JM (NLS) |
| Plaintiff, | ORDER GRANTING MOTION TO DISMISS |
| vs. | |
| NATIONAL ENTERPRISE SYSTEMS, INC., | |
| Defendant. | |

15
16
17
18
19
20
21
22
23

On December 3, 2013, Defendant National Enterprise Systems, Inc. ("Defendant") filed a motion to dismiss the first amended complaint for failure to state a claim. Dkt. No. 9. After the court granted the parties' request to continue the hearing date on this motion, Plaintiff Falu-Maysomet ("Plaintiff") filed an opposition to Defendant's motion, Dkt. No. 12, and Defendant subsequently filed its reply. Dkt. No. 13. For the reasons set forth below, Defendant's motion to dismiss is granted with prejudice as to Plaintiff's allegations in Counts I, II, and III as alleged in the amended complaint.[1]

24

## BACKGROUND

25
26

At some point prior to August 2013, Plaintiff incurred federal student loan financial obligations from United Student Aid Fund ("USAF"). After Plaintiff

27
28

---

[1] As set forth more fully below, Plaintiff withdraws the RFDCPA claim in Count III in her opposition to Defendant's motion to dismiss.

1  defaulted on this debt, USAF assigned the debt to Defendant in order for Defendant

2  to collect the debt from Plaintiff.  Defendant is a corporation operating as a

3  collection agency with its principal place of business in Solon, Ohio.

4        On August 30, 2013, Defendant sent Plaintiff a "NOTICE PRIOR TO WAGE

5  WITHHOLDING" ("Notice"), which Plaintiff has attached to the amended

6  complaint as Exhibit A.  Plaintiff alleges that the Notice contained false and

7  misleading statements in violation of the Fair Debt Collection Practices Act

8  ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

9        The first statement within the Notice provided as follows:

10       You are given notice that **United Student Aid Funds, Inc.**, pursuant to
         federal law . . . will order your employer to immediately withhold
11       money from your earnings (a process known as Administrative Wage
         Garnishment) for payment of your defaulted student loan(s), unless you
12       take action set forth in this notice.

13  Am. Compl., Ex. A at 1 (emphasis in original).  The Notice further stated:

14
         You must establish a written repayment agreement with National
15       Enterprise Systems, Inc. on or before September 29, 2013.  Otherwise,
         United Student Aid Funds, Inc. will proceed to collect this debt through
16       deductions from your pay.  Unless you act by September 29, 2013, your
         employer will be ordered to deduct from your pay an amount equal to no
17       more than fifteen percent (15%) of your disposable pay for each pay
         period, or the amount permitted by 15 U.S.C. 1673 . . . to repay your
18       student loan(s) held by United Student Aid Funds, Inc.

19  Id.  Beginning on the second page of the Notice, Defendant detailed Plaintiff's

20  rights regarding the proposed garnishment of wages.  Specifically, the letter sets

21  forth Plaintiff's rights under the FDCPA and the Higher Education Act ("HEA"),

22  including her right to object to the proposed garnishment and to request a hearing

23  on any objections.  Pages 4, 5, and 6 of the Notice provide a form for Plaintiff to fill

24  out in order to request a hearing on any objections.

25        In the amended complaint, Plaintiff alleges the Notice contained false and

26  misleading statements that overshadowed Plaintiff's actual rights afforded to her

27  under the HEA and FDCPA.  Although the Notice included an explanation of the

28  rights provided by the HEA, Plaintiff contends Defendant's initial statements on the

1  cover page of the Notice contradicted the rights described in subsequent pages.
2  Because the HEA provides a period of thirty days within which Plaintiff could take
3  steps to avoid the garnishment, Plaintiff contends Defendant's statement that
4  Plaintiff's employer will be ordered to "immediately" withhold Plaintiff's wages is
5  patently false, deceptive and misleading, and contrary to the rights afforded to her
6  by law.  Similarly, because the HEA provides a borrower with several options to
7  avoid wage garnishment, only one of which is entering into a repayment agreement,
8  Plaintiff argues Defendant's statement that Plaintiff "must" enter into a repayment
9  agreement or her wages "will" be garnished is false and misleading.

10      Based upon these allegations, the amended complaint contains three claims
11  against Defendant: (1) Violation of 15 U.S.C. § 1692e of the FDCPA by Use of
12  Deception to Collect a Debt; (2)  Violation of 15 U.S.C. §1692f of the FDCPA by
13  Using Unfair or Unconscionable Practices; and (3) Violation of the Rosenthal Fair
14  Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788 *et seq.*  Plaintiff
15  asserts these claims individually and as a class action on behalf of other consumers
16  receiving this type of Notice from Defendant.

17                               **LEGAL STANDARD**

18      For a plaintiff to overcome a Rule 12(b)(6) motion to dismiss for failure to
19  state a claim, the complaint must contain "enough facts to state a claim to relief that
20  is plausible on its face."  Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim
21  has facial plausibility when the plaintiff pleads factual content that allows the court
22  to draw the reasonable inference that the defendant is liable for the misconduct
23  alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Factual pleadings merely
24  consistent with a defendant's liability are insufficient to survive a motion to dismiss
25  because they only establish that the allegations are possible rather than plausible.
26  See id. at 678-79.  The court should grant 12(b)(6) relief only if the complaint lacks
27  either a "cognizable legal theory" or facts sufficient to support a cognizable legal
28  theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

1        In addition, when resolving a motion to dismiss for failure to state a claim,

2   courts may not generally consider materials outside the pleadings.  Schneider v. Cal.

3   Dep't of Corrs., 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998); Jacobellis v. State Farm

4   Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television Ltd. v.

5   Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  "The focus of any Rule

6   12(b)(6) dismissal . . . is the complaint."  Schneider, 151 F.3d at 1197 n. 1.  This

7   precludes consideration of "new" allegations that may be raised in a plaintiff's

8   opposition to a motion to dismiss brought pursuant to Rule 12(b)(6).  Id. (citing

9   Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993); 2 Moore's Fed. Prac. §

10   12.34[2] (Matthew Bender 3d ed.)).

11        However, "[w]hen a plaintiff has attached various exhibits to the complaint,

12   those exhibits may be considered in determining whether dismissal [i]s proper . . . ."

13   Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (citing Cooper v. Bell,

14   628 F.2d 1208, 1210 n. 2 (9th Cir. 1980)).  The court may also consider "documents

15   whose contents are alleged in a complaint and whose authenticity no party

16   questions, but which are not physically attached to the pleading. . . ."  Knievel v.

17   ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing Branch v. Tunnell, 14 F.3d 449,

18   454 (9th Cir. 1994) overruled on other grounds by Galbraith v. County of Santa

19   Clara, 307 F.3d 1119 (9th Cir. 2002)).

20        When considering alleged violations of sections 1692e and 1692f of the

21   FDCPA, the Ninth Circuit applies the "least sophisticated debtor" standard.

22   Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 934 (9th Cir. 2007).  "If the least

23   sophisticated debtor would 'likely be misled' by a communication from a debt

24   collector, the debt collector has violated the FDCPA."  Id. (quoting Swanson v.

25   Southern Oregon Credit Serv., Inc., 869 F.2d 1222, 1225 (9th Cir. 1988)).  "The

26   objective least sophisticated debtor standard is 'lower than simply examining

27   whether particular language would deceive or mislead a reasonable debtor.'"

28   / / /

1  Terran v. Kaplan, 109 F.3d 1428, 1431-32 (9th Cir. 1997)(quoting Swanson, 869

2  F.2d at 1227)).

3  **DISCUSSION**

4  **I. FDCPA Violations in Counts I and II**

5      Under the HEA, eligible lenders make guaranteed loans on favorable terms to

6  students and parents to help finance student education costs.  Rowe v. Educ. Credit

7  Mgmt. Corp., 559 F.3d 1028, 1030 (9th Cir. 2009).  These loans are typically

8  guaranteed by guaranty agencies and are ultimately reinsured by the Department of

9  Education ("DOE").  Id.  If a borrower becomes delinquent in making his or her

10  student loan payments, the guaranty agency has the ability to conduct an

11  administrative wage garnishment pursuant to section 1095a of the HEA.  20 U.S.C.

12  § 1095a(a). However, the garnishment is subject to certain restrictions, such as

13  limiting the maximum garnishment amount to 15% of disposable wages per pay

14  period; requiring notice to be sent to the debtor's last known address at least 30 days

15  prior to issuing a garnishment order to an employer; allowing the debtor the

16  opportunity to inspect and copy documents; conducting a hearing if requested by the

17  debtor within 15 days of the date the 30-day notice is mailed; and disallowing wage

18  garnishment if the debtor has been involuntarily separated from employment and

19  has not been reemployed continuously for twelve months.  20 U.S.C. § 1095a(a)-(c).

20      Plaintiff contends the Notice violated sections 1692e and 1692f of the

21  FDCPA because it would mislead and confuse the least sophisticated consumer

22  concerning their rights under the HEA.  Under section 1692e, a debt collector may

23  not use any "false, deceptive, or misleading representation or means in connection

24  with the collection of any debt."  15 U.S.C. § 1692e.  Section 1692f prohibits

25  "unfair or unconscionable means to collect or attempt to collect any debt."  15

26  U.S.C. § 1692f.  In the amended complaint, Plaintiff specifically objects to two

27  statements in the Notice as violating the FDCPA and raises an additional objection

28  to the Notice in her opposition brief.

### A.  Reference to Immediate Withholding of Wages

Plaintiff's first objection pertains to the Notice's opening line: "You are given notice that **United Student Aid Funds, Inc.**, pursuant to federal law. . ., will order your employer to immediately withhold money from your earnings (a process known as Administrative Wage Garnishment) for payment of your defaulted student loan(s), unless you take action set forth in this notice." Am. Compl. Ex. A at 2 (emphasis in original).  Notwithstanding the explanation of her rights under the HEA on subsequent pages, Plaintiff contends Defendant's language on the cover page advising Plaintiff that the garnishment will commence immediately is patently false, deceptive and misleading, and contrary to the true rights afforded to her by law.

In its motion to dismiss, Defendant argues the Notice does not state that wage garnishment would be immediate; rather, the Notice stated that garnishment of wages would be immediate <u>if</u> Plaintiff did not "take action set forth in this notice." After advising Plaintiff she could potentially avoid wage garnishment, Defendant emphasizes that the Notice then detailed all of the rights available to her under the HEA on the second page.  For this reason, Defendant contends the opening line of the Notice did not violate the FDCPA as it was neither false, deceptive, or misleading.

While acknowledging that the Notice contains the requisite HEA disclosures, Plaintiff contends the language used by Defendant in describing the immediate possibility of wage garnishment is misleading because it overshadows the language informing her of her HEA rights.  Defendant notes that there does not appear to be any case law addressing whether statements made in conjunction with the required HEA disclosure of wage garnishment rights can nonetheless overshadow or contradict the HEA disclosure such that it violates the FDCPA, but does rely on <u>Terran v. Kaplan</u>, 109 F.3d 1428, 1431-32 (9th Cir. 1997), which analyzes 15 U.S.C. § 1692g in another debt collection context.  Much like the HEA's disclosure

1  requirements, section 1692g of the FDCPA requires debt collectors to provide

2  consumers with adequate information concerning their dispute and validation rights,

3  including the right to receive a notice from the debt collector stating the amount of

4  the debt, the name of the creditor to whom the debt is owed, and the ability to

5  dispute the validity of the debt and/or request creditor information and verification

6  of the debt within 30 days.  15 U.S.C. § 1692g.

7         In Terran, the court considered whether the language in a collection letter

8  overshadowed or contradicted the validation notice required by section 1692g so as

9  to confuse a hypothetical least sophisticated debtor.  109 F.3d at 1432.  The

10  one-page letter, typed on Kaplan's law office letterhead, in a uniform size and

11  typeface, provided as follows:

12
13         Please be advised that this office represents MONTGOMERY WARD
       CREDIT CORP with whom you have an outstanding balance of
14         $546.63.

15         Unless an immediate telephone call is made to J SCOTT, a collection
       assistant of our office at (602) 258–8433, we may find it necessary to
16         recommend to our client that they proceed with legal action.

17         Unless you notify us in writing within thirty (30) days after receipt of
       our initial notice that you dispute the validity of this debt, or any
18         portion thereof, we will assume the debt to be valid. Upon such
       notification, we will obtain verification of the debt or a copy of the
19         judgment against you and a copy of such verification or judgment will
       be mailed to you. Upon your written request within the thirty (30) day
20         period described above we will provide you with the name and address
       of the original creditor if different from the current creditor.

21  Id. at 1430.

22         In analyzing Terran, it becomes clear that both the format and substance of a

23  payment demand are important considerations that should bridge typical consumer

24  debts as well as student loan obligations.[2]  Format considerations involve

25  comparative font size, the use of bold-face type, colored type, message placement or

26  arrangement and, ultimately as in Terran, whether the required validation rights are

27

28         [2] One may ponder whether the hypothetical least sophisticated debtor standard
    should apply to the least sophisticated college student.

1    "dwarfed" by the payment demand. Id. at 1433. Substantively, it is important to

2    analyze whether the notice demands the debt be disputed "today," or "immediately,"

3    or whether payment be made "immediately," or whether important statutory rights

4    are not set forth. Id. at 1433-34.

5         In Terran, the court noted that "[t]he [questioned] validation notice

6    immediately follows the language regarding an immediate telephone call. The text

7    of the letter is uniformly presented in ordinary, same-sized font. No emphasis is

8    placed on any particular statement, with the exception of the creditor's name and the

9    name of the person to contact at Kaplan's office." Id. The court also noted that the

10   validation notice immediately followed the language regarding an immediate phone

11   call to arrange payment. Id. The court concluded that the request that the debtor

12   "immediately" telephone a collection assistant to avoid potential legal action did not

13   "overshadow or contradict" the language in the notice that the alleged debtor had

14   thirty days in which to dispute the debt. Id. at 1434. See also Renick v. Dun &

15   Bradstreet Receivable Mgmt. Serv., 290 F.3d 1055, 1057-58 (9th Cir. 2002)(per

16   curiam)(finding a request to "[u]se the tear-off portion of this letter ... to send your

17   payment today" did not overshadow the language in the notice that the alleged

18   debtor has thirty days in which to dispute the debt because it "was in the same font

19   as the surrounding text; was not emphasized in any other way; was in the nature of a

20   request rather than a demand; and carried no sense of urgency").

21        Rather than applying the considered approach of Terran, Plaintiff primarily

22   takes issue with the use of the word "must" in the Notice, as well as with the

23   language in the opening line of Defendant's Notice. Applying the analysis in

24   Terran, the court concludes the language regarding immediate wage garnishment

25   does not violate sections 1692e and 1692f as it does not overshadow or contradict

26   the rights afforded to Plaintiff under the HEA. First and foremost, that language is

27   preceded by the words, in bold, "**NOTICE PRIOR TO WAGE**

28   **WITHHOLDING**." This bold notice language suggests the availability of options

before withholding occurs.  While the complained-of sentence itself contains the word "immediately," there is no threat of immediate wage garnishment.  The remainder of the Notice details the other possible actions Plaintiff may take in order to avoid wage garnishment, including exercising her rights to inspect or request records from Defendant, to object to the proposed garnishment, and to request a hearing.  The available rights under the HEA are written in the same-sized font as the other parts of the Notice, much like the notices in <u>Terran</u> and <u>Renick</u>.  <u>See</u> <u>Terran</u>, 109 F.3d at 1431; <u>Renick</u>, 290 F.3d at 1057.  These rights set forth available options for Plaintiff to avoid or modify wage garnishment.  Thus, much like the use of "immediately" in <u>Terran</u>, that term does not convey a threat which would induce the least sophisticated debtor to give up the rights afforded under the HEA.  <u>See</u> <u>Renick</u>, 290 F.3d at 1057 (finding the statement on the reverse that "PROMPT PAYMENT IS REQUESTED" did not convey a threat that could induce Renick to "ignore his right to take 30 days to verify his debt and act immediately")(quoting <u>Swanson</u>, 869 F.2d at 1226).  Moreover, there is nothing inaccurate about Defendant informing Plaintiff that the administrative wage garnishment would be immediate if she did not dispute the garnishment or invoke her other rights under the HEA.

Essentially, the court concludes that the opening line of the Notice does not overshadow Plaintiff's rights under the HEA.  While indicating that Plaintiff's employer would be instructed to "immediately withhold money from [her] earnings," it clearly states that this withholding would only occur if she did not "take action set forth in this notice."  The Notice goes on to explain Plaintiff's HEA rights in detail.  As in <u>Terran</u>, the text of the opening line is uniformly presented in ordinary, same-size font, with the exception of the lender's name, United Student Aid Fund, Inc., which appears in bold font.  Under the circumstances, the language regarding the possibility of immediate withholding of wages does not overshadow or contradict the Notice's description of the HEA rights available to Plaintiff.

1  Accordingly, the court finds this particular language standing on its own would not

2  deceive or mislead the least sophisticated debtor such that it violates the FDCPA.

3              **B.  Indication that Plaintiff "Must" Set Up a Repayment Plan**

4          Plaintiff's second objection to the Notice pertains to the following language

5  in the final paragraph on the first page of the Notice, stating: "You must establish a

6  written repayment agreement with National Enterprise Systems, Inc. on or before

7  September 29, 2013.  Otherwise, United Student Aid Funds, Inc. will proceed to

8  collect this debt through deductions from your pay."  Am. Compl., Ex. A at 2.

9  Notwithstanding the explanation of her rights under the HEA on subsequent pages,

10 Plaintiff contends Defendant's language advising Plaintiff that the garnishment will

11 occur unless she enters into a repayment agreement is patently false, deceptive and

12 misleading, and contrary to the true rights afforded to her by law.  Plaintiff alleges

13 Defendant's Notice improperly emphasizes that the consumer "must" set up a

14 repayment plan with Defendant in order to avoid wage garnishment, while glossing

15 over the consumer's other equally valid options under the HEA, such as requesting

16 a hearing or providing notice that the consumer has been recently reemployed.

17         In response to Plaintiff's allegations, Defendant notes the request for a written

18 repayment agreement is followed by the enumeration of rights as required by the

19 HEA.  See Renick, 209 F.3d at 1057.  As a result, Defendant contends it would be

20 clear to the least sophisticated debtor that she could take one of several steps to

21 avoid a wage garnishment, such as requesting a hearing to challenge the wage

22 garnishment within 30 days or demonstrate reemployment.  This is supported by the

23 fact that five out of the six pages of the Notice are dedicated to requesting a hearing.

24 Again, Defendant notes the language in question and the language enumerating

25 Plaintiff's HEA rights are in the same style and size font, further indicating that the

26 Notice's request to establish a written repayment does not overshadow Plaintiff's

27 HEA rights.  See Terran,109 F.3d at 1431; Renick, 290 F.3d at 1057.

28 / / /

1    Defendant further emphasizes that the Notice accurately states that wage
2    garnishment could be avoided if a repayment agreement is entered into with
3    Defendant on or before expiration of the 30-day period.  Defendant argues that
4    statement is true as there would be no need for wage garnishment if Plaintiff repaid
5    her student loans per an agreement with the lender or its agent.  Additionally,
6    Defendant argues the Notice accurately states that wage garnishment "will" occur
7    "unless" Plaintiff acts by September 29, 2013, by entering into a repayment
8    agreement or invoking any of Plaintiff's hearing and dispute rights, which are fully
9    explained in the balance of the Notice.

10   In her opposition to Defendant's motion to dismiss, Plaintiff argues it is
11   misleading to tell a consumer that he or she "must" enter into a payment
12   arrangement, without simultaneously notifying the consumer of other equally viable
13   options under the HEA.  Plaintiff contends Defendant initially warns the consumer
14   of the necessity to enter into a repayment agreement, but then fails to treat the other
15   possible options under the HEA in the same fashion or with the same importance.
16   Specifically, Plaintiff objects to the Notice having failed to disclose any of the
17   borrower's rights on its cover page at all, instead leaving the available HEA rights
18   "squirreled away on the second page."  Pl. Resp. 10.

19   Plaintiff relies on Robertson v. Richard J. Boudreau & Assocs., LLC as
20   support for her objection to the Notice based on the list of her rights under the HEA
21   not being included on the first page of the Notice.  2009 WL 5108479 (N.D. Cal.
22   Dec. 18, 2009).  In Robertson, the collection letter initially warned that "unless
23   payment in full is made or you arrange through this firm for the repayment of this
24   debt in a manner acceptable to our client, we will conduct a review of your account.
25   Our review will determine whether there is a valid legal dispute regarding this debt,
26   and assuming none, the most effective means to secure repayment."  Id. at *4.  The
27   court determined that this language implied "to the least sophisticated consumer that
28   the consumer has only one option, to pay or arrange to pay the debt in full."  Id.

1   The following paragraph set forth the consumer's FDCPA right to dispute; however,
2   the court found this insufficient as "[s]tating inconsistent information in separate
3   paragraphs does not provide the level of consumer protection Congress mandated."
4   Id.  Here, Plaintiff contends the "must establish a written payment agreement"
5   language suggested she had only one option in order to avoid wage garnishment,
6   and the notification of the right to request a hearing is not disclosed until the second
7   page when the Notice's cover page commands that a payment arrangement "must"
8   be made.  Like Robertson, Plaintiff argues the language on the cover page is
9   inconsistent with consumers' other HEA rights, and therefore does not provide the
10  level of consumer protection Congress mandated.
11       To avoid violating the FDCPA, Plaintiff contends Defendant should have
12  provided the consumer with a series of mutually exclusive options based upon the
13  HEA's requirements on the cover page of the Notice.  Plaintiff suggests this would
14  require no more than the inclusion of one sentence notifying the consumer that to
15  avoid immediate wage garnishment, she must: 1) enter into a payment plan; 2)
16  request a hearing; or 3) inform Defendant that she had been involuntarily separated
17  from employment.
18       In its reply brief, Defendant asserts that Plaintiff wrongfully characterizes the
19  Notice as emphasizing that she "must" establish repayments as the word "must"
20  received no emphasis, and was in the same-sized font as other language in the
21  notice.  Additionally, Defendant argues the Notice actually emphasized Plaintiff's
22  HEA rights and the hearing procedure on the second page of the notice using bold
23  and underlined typeface stating: "**You have the following rights regarding this**
24  **action: . . .**."  Am. Compl., Ex. A at 3.  Defendant contends the Notice did
25  simultaneously (and accurately) explain to Plaintiff that: (1) she must enter into a
26  repayment agreement to avoid the administrative wage garnishment procedure, and
27  (2) she has a variety of other options to avoid administrative wage garnishment,
28  including the option to raise as objections the existence of the debt, the amount of

the debt, or that making installment payments in amounts equal to 15% of your disposable pay, or having payments in that amount withheld from your disposable pay would constitute an extreme financial hardship.

Defendant further objects to Plaintiff's characterization of her HEA rights being "squirreled away" on the second page of the Notice.  Defendant argues nothing is "squirreled away" on the second page.  Rather, the second page of the notice prominently informed Plaintiff of her rights under the HEA, and how to request a hearing, in bold and underlined typeface, with the explanation of her rights set forth in neat, organized bullet points.  Defendant notes that the Notice also informs Plaintiff she can avoid wage garnishment by entering into a repayment plan on the second page of the Notice, in the second bullet point, alongside the explanation of Plaintiff's other rights under the HEA.  This language receives no special emphasis, it is argued, and the remaining bullet points on the second page clearly and accurately explain how Plaintiff may object to wage garnishment in the absence of a repayment agreement.  As a result, Defendant contends the alleged "command" to make an agreement certainly did not take precedence over all other options, when the repayment agreement language appeared alongside the enumeration of various objections Plaintiff may assert if no repayment agreement is reached.

Lastly, Defendant emphasizes that the Notice is six pages in length, with five of the six pages devoted to explaining Plaintiff's rights under the HEA, including the three-page form to request a hearing.  As a result, Defendant argues Plaintiff cannot reasonably contend she was misled or that her HEA rights were overshadowed when five of the six pages of the Notice fully explained her HEA rights, including how to object to wage garnishment and request a hearing. Defendant notes the language Plaintiff complains about on the first page of the Notice received no special emphasis and is consistent with the balance of the Notice.

Having reviewed the entirety of the Notice, the court finds the language on the cover page does not overshadow or contradict Plaintiff's rights under the HEA as detailed on the remaining pages of the Notice.  While the language itself suggests Plaintiff must establish repayment to avoid wage garnishment, the Notice clearly states after that paragraph: "***NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.***"  As noted by Defendant, the second page of the Notice states in bold and underlined font: "**You have the following rights regarding this action**:" and proceeds to describe Plaintiff's rights under the HEA in an organized and concise fashion.  On the cover page, the Notice indicates that Plaintiff needs to take action to avoid wage garnishment, and the remaining five pages provide her with the information she needs to do so.  Moreover, the ability to seek a written repayment agreement is a valid method for Plaintiff to avoid wage garnishment under the HEA.  Finally, although not emphasized by either party, the language employed throughout the notice is plain and clear, <u>especially</u> when the HEA rights are articulated.  Both the primary notice paragraph and the HEA rights are devoid of legalese.

As for the decision in <u>Robertson</u>, it was not based entirely on the location of the required disclosure of the borrower's rights compared to the objectionable statement.  The court primarily objected to the language used by the debt collector because it overshadowed the rights provided in the next paragraph.  The court determined that the language "directly contradicts a debtor's statutory right to dispute the validity of the debt within thirty days of receipt, and suggests that defendant alone will determine if there is any valid dispute, without plaintiff's input." <u>Robertson</u>, 2009 WL 5108479 at *4.  The court found that the debt collector could not "imply in one paragraph that plaintiff has no right to dispute the debt and then cure that violation in the next paragraph by stating that plaintiff has such a right." <u>Id.</u>  Here, the objectionable phrase in the Notice informs Plaintiff that she can avoid wage garnishment by entering into a written payment agreement, one of

the rights available to her under the HEA, but it does not directly contradict Plaintiff's right to object to the wage garnishment or request a hearing. Accordingly, <u>Robertson</u> is of limited relevance here.

Taken in isolation, the court recognizes Plaintiff's concern regarding the following language: "You must establish a written repayment agreement with National Enterprise Systems, Inc. on or before September 29, 2013. Otherwise, United Student Aid Funds, Inc. will proceed to collect this debt through deductions from your pay." Am. Compl., Ex. A at 2. This is suggestive of a procedural equation: no repayment agreement equals wage garnishment. Such an interpretation, standing alone, would be inconsistent with the options set forth on the following pages of the Notice. However, the question is whether this statement overshadows the language in the Notice detailing the several options available to Plaintiff, particularly when the Notice states, in bold, "***NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION***" immediately following the objectionable paragraph. This language actually draws the debtor to the thorough description of her rights on the following page. Given this context, the language objected to by Plaintiff, while concerning, does not overshadow the information provided in the remainder of the Notice.

Notably, the question is not whether this notice could have been better constructed or more mitigated in tone, or whether several pages of rights should have been integrated with the initial demand paragraphs. To be sure, the form and content of any demand or notice may always be susceptible to improvement. As stated in <u>Terran</u>, however, "[the court's] role . . . is . . . the essentially negative one of examining whether a given notice comports with the requirements of the statute." <u>Terran</u>, 109 F.3d at 1433 (citations and internal quotations omitted).

For these reasons, the language indicating Plaintiff must establish a written repayment agreement in order to avoid wage garnishment does not overshadow or contradict the Notice's description of the HEA rights available to Plaintiff.

1   / / /

2   Therefore, the court concludes this particular language would not deceive or

3   mislead the least sophisticated debtor such that it violates the FDCPA.

4           *C. Request for Written Documentation of Employment*

5           In Plaintiff's opposition to Defendant's motion to dismiss, she raises a basis

6   for her FDCPA claims that was not initially raised in her amended complaint.  For

7   the first time, Plaintiff contends the Notice is misleading because it requires the

8   consumer to provide written proof of their employment status to satisfy the HEA's

9   employment exemption when there is no such requirement under the law.[3]

10          Defendant argues Plaintiff's new allegation should not be considered by the

11  court because it is not pled in her amended complaint.  Courts "*may not* look beyond

12  the complaint to a plaintiff's moving papers, such as a memorandum in opposition

13  to a defendant's motion to dismiss."  See Schneider v. California Dept. of

14  Corrections, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) (emphasis in original);

15  Cordell v. Tilton, 515 F. Supp. 2d 1114, 1128 (S.D. Cal. 2007) (same); Evans v.

16  County of San Diego, 2008 WL 842459, at *6 (S.D. Cal. Mar. 27, 2008) (same).

17  Accordingly, Defendant contends the court should not consider this additional

18  objection when deciding whether to dismiss the complaint.

19          The court agrees with Defendant's assessment and finds Plaintiff improperly

20  asserted this objection for the first time in her opposition to Defendant's motion to

21  dismiss rather than in her amended complaint.  As a result, it cannot be used as a

22  means of surviving Defendant's motion to dismiss for failure to state a claim.

23  Under the circumstances, the court is reluctant to conclude that Plaintiff cannot

24

25

26          [3] On the second page, the Notice states: "If you wish to claim this exemption from wage garnishment, you need to complete Part II of the enclosed Request for Hearing form and send us written proof that you qualify for the exemption by September 29, 2013."  Am. Compl., Ex. A at 3.  Under the HEA, "[t]he guaranty agency may not garnish the wages of a borrower whom it knows has been involuntarily separated from employment until the borrower has been reemployed continuously for at least 12 months."  34 C.F.R. § 682.410(b)(9)(i)(G).

27

28

possibly articulate a valid FDCPA claim regarding the written proof of employment requirement.  Accordingly, the court grants Plaintiff leave to amend the complaint.[4]

**II.  Violation of RFDCPA in Count III**

Defendant seeks dismissal of Plaintiff's RFDCPA claim for many of the same reasons discussed above with regard to the FDCPA.  In addition, Defendant contends Plaintiff's claim under the RFDCPA is expressly preempted by the HEA. In her opposition to Defendant's motion to dismiss, Plaintiff withdraws her RFDCPA claim alleged in Count III.  Accordingly, Plaintiff's RFDCPA claim in Count III is dismissed.

## CONCLUSION

For the foregoing reasons, the court grants Defendant's motion to dismiss. Because Plaintiff's present claims do not appear curable by further amending her complaint as they are cabined by the undisputed language of the Notice, the claims in Counts I, II, and III of the first amended complaint are dismissed without leave to amend.  Plaintiff does, however, have leave to amend the complaint with regard to the Notice's written proof of employment requirement and must do so within twenty days of the filing of this order.

IT IS SO ORDERED.

DATED:  March 21, 2014

Hon. Jeffrey T. Miller
United States District Judge

---

[4]  Should Plaintiff consider amending her complaint to include this claim, she may wish to bear in mind the implications of the Seventh Circuit's decision in <u>Kort v. Diversified Collection Serv.</u>, 394 F.3d 530 (7th Cir. 2005) as raised by Defendant in its reply brief.